IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 02-cv-01495-MSK-BNB

EDMUNDO HERNANDEZ,

    Plaintiff,

v.

RICHARD A. SOARES,
TIM SMELSER
and TREVOR WILLIAMS,

    Defendants.
_____

**OPINION AND ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**
_____

**THIS MATTER** comes before the Court pursuant to the Defendants' Motion for Summary Judgment **(# 51)**, and the Plaintiff's response **(# 70)**; and the Defendants' Motion to Seal **(# 73)**.

The Court has previously discussed the factual background of this case in its September 9, 2003 Order **(# 17),** which recitation is deemed incorporated herein. In brief, on November 12, 1999, the Plaintiff participated in a hearing to determine whether allegations that he was conspiring to murder a prison staff member warranted his placement in Administrative Segregation. Although the Plaintiff requested an inmate representative to assist him, that request was denied by the Hearing Officer, Defendant Williams. The evidence produced at the hearing consisted of written testimony from Defendant Smelser, who relayed "confidential information"

1

from several informants implicating the Plaintiff in gang activity. At the close of the hearing, Defendant Williams found that the Plaintiff was a known leader in the Mexican Mafia, had orchestrated "hits" against known gang members in the Limon Correctional Facility, and was planning an assault on a staff member. Defendant Williams, although finding that the Plaintiff "is not a management problem in the cell house or directly towards staff members," found that the Plaintiff "is without a doubt a threat to the safety and security" of the facility, and directed that he be assigned to Administrative Segregation.

The Plaintiff then commenced this action under 42 U.S.C. § 1983 alleging three causes of action: (i) denial of his Due Process rights under the 14th Amendment, in that he was denied a meaningful hearing; (ii) denial of his 6th Amendment right to counsel, in that he was not afforded a representative for the Administrative Segregation hearing; and (iii) a denial of his Equal Protection rights under the 14th Amendment, in that he was discriminated against based on his Mexican-American nationality.

The Defendants move for summary judgment **(# 51)** on all three claims, alleging that: (i) on the Due Process claim, the Plaintiff cannot show that the procedures used by the Defendants were unconstitutionally insufficient; (ii) on the Sixth Amendment claim, the Plaintiff cannot show circumstances establishing his constitutional right to assistance by a representative; and (iii) on the Equal Protection claim, the Plaintiff cannot show preferential treatment afforded to other similarly-situated non-Mexican inmates. At the same time, the Defendants move for leave to file under seal **(# 74)** the confidential informant statements considered by Defendant Williams as the Hearing Officer.

The Plaintiff filed a *pro se* response **(# 71)** to the motion for summary judgment.  Reading that response liberally, *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir.1991), the Court discerns the following points made by the Plaintiff in response: (i) with regard to the Due Process claim, that he was denied his right to a hearing before an impartial three-member hearing board; that he was entitled to review within 24 hours of the decision to place him immediately in Administrative Segregation pending the hearing;  that the Hearing Officer was prejudiced against him;  that there was insufficient evidence to support the allegations against him; that the allegations were fabricated; that the Plaintiff has suffered injuries as a result of the denial of Due Process; that the Defendants failed to advise him of the time, place, and date of the alleged misconduct in the pre-hearing notice; that the defendants did not disclose the general substance of the confidential information upon which the charges were based; and that regulations involving tie votes by the Classification Committee were violated (ii) with regard to the Sixth Amendment claim, he needed the assistance of an inmate representative to "help find out what guidelines I had to follow and why these guidelines were not stipulated in order for the Plaintiff to see exactly where and how what guidelines are applies in such particular hearing"; that all other prisoners accused of similarly severe conduct were provided with inmate representatives;  that the lack of a representative enabled the Defendants to fabricate charges against the Plaintiff and secure a conviction; and that the Plaintiff's placement in Segregation and his lack of legal training prevented him from gathering evidence or questioning witnesses; and (iii) with regard to the Equal Protection claim, that the Plaintiff was "targeted for [disparate] treatment by the defendants due to [his] Mexican-American race"; that the accusations that the Plaintiff was a member of the "Mexican Mafia" was based on his heritage; and that he has suffered

3

various injuries, including property loss, humiliation and mental anguish, loss of contact visits and other privileges.

Rule 56 of the Federal Rules of Civil Procedure facilitates the entry of a judgment only if no trial is necessary. *See White v. York Intern. Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). Summary adjudication is authorized when there is no genuine dispute as to any material fact and a party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Substantive law determines what facts are material and what issues must be determined. It also specifies the elements that must be proved for a given claim or defense, sets the standard of proof and identifies the party with the burden of proof. *See Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 248 (1986); *Kaiser-Francis Oil Co. v. Producer's Gas Co.*, 870 F.2d 563, 565 (10th Cir. 1989). A factual dispute is "genuine" and summary judgment is precluded if the evidence presented in support of and opposition to the motion is so contradictory that, if presented at trial, a judgment could enter for either party. *See Anderson*, 477 U.S. at 248. When considering a summary judgment motion, a court views all evidence in the light most favorable to the non-moving party, thereby favoring the right to a trial. *See Garrett v. Hewlett Packard Co.*, 305 F.3d 1210, 1213 (10th Cir. 2002).

If the moving party does not have the burden of proof at trial, it must point to an absence of sufficient evidence to establish the claim or defense that the non-movant is obligated to prove. If the non-movant comes forward with sufficient competent evidence to establish a *prima facie* claim or defense, a trial is required. If the non-movant fails to produce sufficient competent evidence to establish its claim or defense, the claim or defense must be dismissed as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

The Plaintiff's *pro se* status entitles him to a liberal construction of his pleadings to overcome defects in citation to proper legal authority, confusion of various legal theories, poor syntax and sentence construction, or unfamiliarity with pleading requirements, but it does not relieve him of the obligation to allege sufficient facts to establish the existence of a viable cause of action at each stage of the litigation. *Hall*, 935 F.2d at 1110. A party facing a motion for summary judgment may not simply rest on his pleadings or on conclusory assertions, but must point to specific evidence that, if admitted at trial, would be sufficient to carry his burden of proof. *BancOklahoma Mort. Corp. v. Capital Title Co.*, 194 F.3d 1089, 1097 (10th Cir. 1999). The facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998)

Turning first to the Due Process claim, the Plaintiff must prove two elements: (i) that a recognized liberty or property interest has been interfered with by the Defendants and (ii) that the procedures attendant to that deprivation were not constitutionally sufficient. *Kentucky Dept. of Corrections v. Thompson*, 490 U.S. 454, 460 (1989). The Defendants concede that the Plaintiff has a protectible liberty interest in avoiding placement in Administrative Segregation, and thus, the sole question is whether the procedures used by the Defendants were sufficient to satisfy the Due Process clause.

Whether procedures attendant to a deprivation of a liberty interest are constitutionally adequate is a flexible determination driven by the demands of the particular situation. *Wilkinson v. Austin*, 545 U.S. 209, ___, 125 S.Ct. 2384, 2395 (2005). The question turns on three factors: (i) the private interest affected by the official action; (ii) the risk of an erroneous deprivation resulting from the procedures and the probable value, if any, of additional or substitute

5

safeguards; and (iii) the Government's interests, including the function involved and the fiscal and Administrative burdens that additional or substitute procedures would entail. *Id.* Among the most important procedural safeguards are notice of the basis for which Administrative Segregation is proposed and an opportunity by the inmate to rebut the allegations. *Id.* at 2396. Other procedural protections of value include a statement of the facts and reasoning if Administrative Segregation is imposed and multiple levels of review. *Id.*

Addressing a similar issue – the process due to an inmate before assignment to a highly-restrictive "supermax" facility – the Supreme Court in *Wilkinson* held that the nonadversary procedures set forth in *Hewitt v. Helms,* 459 U.S. 460 (1983), provide the appropriate model for assessing the adequacy of procedural safeguards. 152 S.Ct. at 2397. In *Hewitt*, the Supreme Court held that the Government was "obligated to engage only in an informal, nonadversary review of the information supporting [the inmate's] Administrative confinement, including whatever statement [the inmate] wished to submit, within a reasonable time after confining him to Administrative segregation." 459 U.S. at 472. The only requirements are that the inmate receive some notice of the charges against him and an opportunity to present his views to the prison official charged with deciding whether to assign him to Administrative Segregation. *Id.* at 476. This, coupled with the decisionmaker reviewing the charges and the evidence for and against the inmate, satisfies the Due Process clause. *Id.*

In their motion, the Defendants assert that these minimum standards were met. The Defendants contend that the Plaintiff was provided with a written Notice for Administrative Segregation on November 9, 1999, advising him that he was alleged to have "taken a leadership role in a security threat group" called the "Millennium Movement," and that, at the Plaintiff's

orders, member of the group had assaulted rival gang members and others, and was planning the murder of a corrections officer. The Plaintiff does not deny having received the Notice, nor does he apparently contest its level of specificity or detail. Thus, the undisputed facts indicate that the Plaintiff received constitutionally adequate notice of the charges against him. The Plaintiff complains that the Notice did not give details of the time, date, and place of the conduct he is alleged to have engaged in, but there is no indication that any particular level of specificity in such a notice is necessary to satisfy the Due Process clause. In any event, the record indicates that the Notice was sufficiently specific to advise the Plaintiff of the general nature of the accusations against him.

The Defendants further contend that the Plaintiff was allowed to be present at his hearing, and was given an opportunity to rebut the charges against him. The transcript of that hearing, attached as an exhibit to the Defendants' motion, indicates that the Plaintiff was advised of his right to request witnesses to testify, his right to remain silent, and his right to present evidence on his own behalf. Defendant Williams, the Hearing Officer, then reviewed the Notice for Administrative Segregation with the Plaintiff, and elaborated upon the allegations therein, advising the Plaintiff that Defendant Smelser had obtained information that the Plaintiff was affiliated with members of the Mexican Mafia or a group known as Suernos 13, among other prison gangs. Defendant Williams explained that the source of the information was confidential, but that the Plaintiff was "more than welcome to question me on (sic) and I can tell you as much as I am able to tell you at this particular point." Defendant Williams then heard from the Plaintiff's Case Manager, who stated that the Plaintiff had completed mental health programs and his GED, but had not been at the facility long enough to participate in any programs.

Defendant Williams then heard from the Plaintiff himself, who inquired as to the source of the information against him. Defendant Williams indicated that the information came from interviews with "several people throughout the facility," both inmates and staff, as well as people that the Plaintiff's past in California. Defendant Williams invited the Plaintiff to discuss the information with Defendant Smelser. The Plaintiff then asked whether there was proof of his involvement with the Mexican Mafia or Suernos 13, to which Defendant Williams explained that there was proof in the confidential information, and that the Plaintiff could discuss it with Defendant Smelser. The Plaintiff continued to inquire as to the proof against him, and was advised that it was statements by the people interviewed. The Plaintiff pointed out that there was not enough evidence to support a disciplinary charge against him for plotting the murder of the correctional officer, and Defendant Williams acknowledged that no disciplinary notice was pending. The Plaintiff argued that if insufficient evidence existed to charge him with a disciplinary violation, it would also be improper to place him in Segregation on the same evidence. He further denied having taken any leadership role, and explained that his history suggested that he would not have engaged in such conduct. Defendant Williams then heard from the Plaintiff's Case Manager that the Plaintiff had had no problems in his housing unit and had caused no problems for the Case Manager. At that point, Defendant Williams closed the hearing.

From the transcript, it is clear that the Plaintiff received a constitutionally sufficient hearing. He was fully heard in his own defense, both in his denials of involvement with the activities identified in the Notice and in his assertions that his history as an inmate made those charges implausible. He was given the opportunity to inquire about the evidence against him, and although his efforts to discern the precise details of that evidence were stymied by the confidential

8

nature of the informants, he was provided with some detail, given the opportunity to address it, and invited to discuss the issue further with Defendant Smelser.[1]  The Plaintiff does not dispute that the transcript accurately reflects the content of the hearing.  Thus, the record indicates that the Plaintiff received a hearing that comported with the Supreme Court's requirements.

Finally, the Supreme Court requires that the Hearing Officer review the evidence for and against the inmate before issuing a determination.  The transcript of the Plaintiff's hearing includes Defendant Williams delivering his determination, in which he credits the confidential information against the Plaintiff and acknowledges that the Plaintiff has not posed any direct problems to the staff.  Although Defendant Williams did not specifically discuss all of the various matters raised during the hearing, it is sufficient to observe that he acknowledged evidence in mitigation as part of his analysis, suggesting that he considered both the evidence for and the evidence against the Plaintiff.  The Plaintiff makes a conclusory assertion that Defendant Williams was biased against him, but offers no support for this contention.  In light of his *pro se* status, the Court will treat the Plaintiff's response, which is otherwise unsupported by evidentiary submissions, as an affidavit attesting to the factual matters contained within it.  Nevertheless, the Court finds that the Plaintiff has not raised a genuine issue of fact on the Due Process claim. Assuming (without necessarily holding) that a non-biased decisionmaker is an essential component of Due Process, the Court nevertheless finds the Plaintiff's conclusory assertion of prejudice insufficient to raise a genuine

---

[1] The transcript indicates that, although the Plaintiff was advised at the beginning of the hearing of his right to call witnesses, he did not ask to have Defendant Smelser testify.

issue of fact. Thus, the record indicates that the Plaintiff received all of the minimum constitutional requirements.[2]

In his response, the Plaintiff cites to a portion of Administrative Regulation 600-02, which governs Administrative Segregation classifications, but the cited section is irrelevant, dealing with the rights of inmates who are anticipatorily placed in Segregation prior to the opportunity for a hearing. Even assuming that the Plaintiff is correct that this regulation applies to him and that he did not receive a prompt review of his anticipatory segregation under this regulation, the issue became moot once the Plaintiff received a full hearing and had his Segregation assignment sustained.[3] In another portion of his response, the Plaintiff cites to a portion of the regulation concerning tie votes by a Classification Committee. That portion of the regulation is plainly irrelevant to the issues presented here.

The Plaintiff also alleges that there was insufficient evidence to support Defendant Williams' finding. Sufficiency of the evidence is not a challenge contemplated under the notion of Procedural Due Process, but arguably, the Court could construe the Plaintiff to be asserting a Substantive Due Process challenge – in essence, claiming that Defendant Williams' determination

---

[2]The Court further notes that Defendant Williams advised the Plaintiff of his right to appeal the determination to the warden. The Plaintiff filed such an appeal, and the determination was upheld. The existence of an appeal procedure is an additional procedural safeguard discussed in *Wilkinson*, and further supports a conclusion that the Plaintiff was not denied Due Process.

[3]Arguably, the Court could construe the Plaintiff's Due Process claim as a complaint that his temporary assignment to Segregation pending a hearing, not deficiencies in the ultimate hearing her received, constitute the constitutional deprivation. Although the record would not permit the Court to enter summary judgment on this miniaturized version of the Due Process claim, it is sufficient to note that there is no indication that this temporary assignment to Segregation resulted in any physical harm, thus preventing the Plaintiff from any recovery for such a deprivation under 42 U.S.C. § 1997e(e).

was arbitrary and capricious. Nevertheless, as the party with the burden of proof on a Substantive Due Process claim, the Plaintiff bears the burden of coming forward with facts sufficient to establish such a claim. Only Governmental conduct that is completely arbitrary and lacking any rational basis will be deemed to constitute a Substantive Due Process violation. *Collins v. City of Harker Heights*, 503 U.S. 115, 116 (1992). The Substantive Due Process doctrine does not guarantee against incorrect or ill-advised government decisions. *Id.* at 129. Here, the record indicates that Defendant Williams based his decision on certain "confidential" information that has been filed under seal. The Court has reviewed that information, and finds that the Hearing Officer's conclusions are supported by substantial evidence contained therein. Accordingly, the Defendants are entitled to summary judgment on any Substantive Due Process claim the Plaintiff may assert.

The remainder of the Plaintiff's response consists of a list of case citations for which no analysis is provided. The Court has reviewed each of the cited cases, and finds nothing in them that would indicate that, under the facts presented here, summary judgment in favor of the Defendants on the Due Process claim is unwarranted. Accordingly, the Defendants are entitled to judgment on the Plaintiff's Due Process claim.

The Plaintiff's second claim challenges the Defendants' denial of an inmate representative to assist the Plaintiff during his hearing. As the Court has discussed in a previous order in this case, except in circumstances of illiteracy or unusual complexity, inmates do not possess a constitutional right to attorney representation or inmate assistance at Administrative hearings. *Wolff v. McDonnell,* 418 U.S. 539, 569-70 (1984). In his response, the Plaintiff does not allege that he is illiterate, or that the accusations against him were so complex that assistance would be

required. Rather, he states that an inmate representative was necessary to "help find out what guidelines I had to follow." It is unclear what "guidelines" the Plaintiff refers to. Defendant Williams advised the Plaintiff of the contours of his rights at the beginning of the hearing, informing the Plaintiff that he would be permitted to call witnesses, to present evidence, and to remain silent if he wished, and advised him at the end of the hearing of his right to appeal the determination. There is no indication that the Plaintiff did not understand these advisements, and indeed, the Plaintiff availed himself of the opportunity to appeal. Moreover, there is no evidence in the record to indicate that, even in Administrative Segregation, the Plaintiff could not have obtained a copy of Administrative Regulation 600-02, apparently the only regulation relevant to the hearing process. Thus, there is no indication that the Plaintiff's ability to present his own case was so limited that inmate representation was constitutionally mandated.

The Plaintiff makes an abbreviated argument that other inmates "charged with class 1, 2, and 3 C.O.P.D. violations" have been afforded inmate representatives. However, the record is undisputed that the Plaintiff was not actually charged with a disciplinary violation. Rather, the Administrative Segregation hearing was a non-disciplinary hearing to assess the suitability of the classification level assigned to the Plaintiff. Thus, practices relating to inmate representation for inmates charge with disciplinary violations are irrelevant.

Accordingly, there are no genuine issues of fact with regard to the Plaintiff's Sixth Amendment claim, and the Defendants are entitled to judgment on that claim.

Finally, the Plaintiff's third claim alleges an Equal Protection violation, in that he was treated differently from similarly-situated individuals of non-Mexican descent. A person asserting an Equal Protection violation must prove that similarly-situated persons outside his protected

class were treated more favorably. *Bartell v. Aurora Pub. Sch.*, 263 F.3d 1143, 1149 (10th Cir. 2001).  Here, the Plaintiff has not identified any similarly-situated individuals whom he contends were treated more favorably than he was. Consequently, he has not established any genuine issue of fact on this claim requiring trial.

For the foregoing reasons, the Defendants' Motion for Summary Judgment **(# 51)** is **GRANTED** in its entirety.  Judgment in favor of the Defendants will enter on all of the claims in the Complaint, and upon entry, the Clerk of the Court shall close this case.  The Motion to Seal **(# 74)** is **GRANTED.**

Dated this 20th day of July, 2006

**BY THE COURT:**

*[signature: Marcia S. Krieger]*

Marcia S. Krieger
United States District Judge